32 C.C.P.A. (Patents)

## Application of McCOY.

## Patent Appeal No. 4948.

### Court of Customs and Patent Appeals.

#### March 2, 1945.

Pennie, Davis, Marvin & Edmonds, of New York City (Clarence M. Fisher, of Washington, D. C., and W. Brown Morton, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner rejecting all the claims of an application for the reissue of patent No. 2,168,651, issued August 8, 1939, relating to a method of packaging articles in trans-

parent wrapping films. The application for reissue was filed August 2, 1940, a few days less than one year after the original patent was issued. It does not embrace any of the eight claims of the original patent (all of which were method claims), but presents 13 method claims numbered 1 to 8, inclusive, 19, 20, 21, 26, and 38, and one product claim numbered 39, all of which differ from the patent claims as hereinafter described.

Additional claims were before the examiner. He rejected those also, and they were included in the appeal to the board but subsequently were withdrawn before that tribunal and the appeal as to them was dismissed by it.

In the decision of the board, claims 1, 2, and 38 are quoted as illustrative. They read:

"1. A method of packaging which includes the steps of sealing an article at atmospheric pressure in a loosely fitting wrapper consisting of a rubber hydrohalide, and heating the entire surface of said wrapper to a temperature and for a time sufficient to shrink the same to closely embrace the surface of the article without imparting even temporary tackiness to said wrapper."

"2. A method of packaging which includes the steps of heating a film of rubber hydrohalide until the same acquires a high degree of elasticity, and stretching the same in contact with the surface of an article to be wrapped therein."

"38. A method of packaging which includes the steps of heating a film of thermostretchable wrapping material until the same is readily stretched, and stretching the same in contact with the surface of an article to be wrapped therein, completely enclosing the article in the film and sealing the film together at a point by forming a pig-tail of the film."

The product claim (No. 39) reads as follows:

"39. A package comprising an article and a thermostretchable wrapping film in which the article is enclosed, the enclosure being formed from a flat film, the film being stretched around the article and closely conforming to the shape of the article, the film being closed at a single point with a pig-tail, the stretched portion of the film being thinner than the balance and having therein a grain characteristic of film so stretched."

The issue presented here is of an unusual character, and the primary question is one of law which does not require any detailed analysis of the claims.

The grounds of rejection applied by the examiner to all the claims on appeal, and expressly approved by the board, are, briefly, that they embody new matter; that they are broader than the disclosure of the patent, reissue of which is sought, and that the oath filed with the reissue application fails to support sufficient grounds of inadvertence, accident, or mistake to warrant a reissue.

Claims 26, 38, and 39 were additionally rejected by the examiner as unpatentable in view of the following prior patents:

Calvert, 2,168,015, August 1, 1939.

Vogt, 2,156,466, May 2, 1939.

Clark, 2,207,853, July 16, 1940.

This rejection was not overruled but apparently was tacitly approved by the board.

It is stated in appellant's brief, and was repeated at the oral argument before us by counsel for appellant, that the Goodyear Tire and Rubber Company acquired ownership of the McCoy patent not long after its issuance, and was the owner of same at the time the application for reissue was filed and is the actual party in interest here. We understand that a Calvert patent (not the one cited as a reference here) is also owned or controlled by the Goodyear company and that it discloses the material ("Pliofilm") with which McCoy worked in developing the invention embodied in the claims of the patent.

The brief on behalf of appellant states:

"In order to fully explain the subject-matter of the McCoy patent it is necessary to review briefly the development and use of transparent wrapping film during the past decade. The popularity of cellophane as a wrapping material following its introduction some fifteen or twenty years ago led to considerable activity in the development of transparent wrapping films from other materials. Among those attracted to this field was the Goodyear Tire and Rubber Company who, after several years of development and research put on the market in 1933 or 1934 a thin, flexible, transparent sheet material for use primarily as a wrapping material. The trade name of the material is Pliofilm, and the process employed in its manufacture is described in the patent to one Calvert, No. 1,989,632,

dated January 29, 1935. The material consists essentially of a derivative of rubber called rubber hydrochloride and as described in the above mentioned patent and marketed by Goodyear it contained, as an added ingredient, a light stabilizer which served to prolong its useful life when exposed to strong light. The material has been marketed in substantial volume by the Goodyear Company.

"The characteristics of the new Goodyear film upon which emphasis was laid by the Goodyear Company are its extreme flexibility so that it can be folded easily without creasing; high tensile strength permitting the use of very thin films; a high degree of imperviousness to moisture; and a comparatively low melting point which facilitates a ready heat-sealing of the wrapper to produce a moisture-proof covering. The party McCoy, experimenting with the Goodyear material, discovered certain unique properties possessed by the material which were not publicized by the Goodyear Company or mentioned in the Calvert patent covering the material and its process of manufacture."

The brief then describes the properties referred to, states the method of their utilization, and continues:

"The specification of the McCoy patent is a complete and accurate disclosure of his invention *except in one particular*. McCoy fully and accurately describes the unique properties which he had discovered in Pliofilm and which made possible the new methods of wrapping which he had devised. The specification also describes in detail several alternate procedures for carrying out in a practical and economical manner his new methods of wrapping. McCoy should have been content to stop at this point, but, having an imaginative mind, which is perhaps essential to an inventor, he speculated on the cause of the unique behavior of the Pliofilm sheet upon heating and included in his specification a speculative explanation of the supposed action which took place in the film when heated in the manner and to the extent described in his patent. * * *" (Italics quoted.)

At this point we turn from the brief for appellant and quote the following from the statement of the examiner made upon the appeal to the board, the italics being ours:

"The instant application is an application for the reissue of the McCoy patent 2,168,-651 granted to a method of packaging.

In accordance with the invention disclosed and claimed in the McCoy patent, a film of *stabilized* rubber hydrochloride (pliofilm) is applied to the article to be wrapped and then subjected to heat to cause the film to shrink tightly around the article. The film is pretreated so that it will possess this desired shrinking characteristic by heating the film and stretching the same and then cooling the film while so stretched. *All of the claims* of applicant's original patent are drawn to *'stabilized'* rubber hydrochloride. Applicant's original patent contains the following disclosure:

" 'The extensibility, toughness, and elasticity thus imparted to the material is not lost upon cooling thereof, but is retained for a long period thereafter, indicating a chemical change in the material itself. This is believed to include the formation of a reaction product of the unsaturated rubber hydrochloride and hexamethylene tetramine used as a *stabilizer* in the commercial form of the "Pliofilm". Whether or not this is the case, however, it is apparent that the presence in the compound of a photochemical inhibitor of the class disclosed and claimed in the aforesaid patent, retards a return of the heat treated film to its original low degree of extensibility and elasticity, just as it retards the physical and/or chemical changes in the original film which would otherwise render it brittle within a short time.'

"The quoted statement appears to clearly indicate that the properties of his wrapping film are derived from the *stabilizing* agent used in the preparation of the rubber hydrochloride film.

"This application for reissue is filed to broaden applicant's disclosure and claims by the *omission of the reference to the use of a stabilizing agent* in the rubber hydrochloride film. Also a number of more detailed claims have been added, all of which, however, *omit any reference to the use of a stabilizing agent* in the rubber hyrochloride film."

The examiner then proceeded to state at some length the reasons for the different grounds of rejection which he deemed applicable. Those reasons were approved by the board, being epitomized by the latter tribunal as follows:

"All the claims have been rejected in one instance as being broader than applicant's original disclosure. This point of rejection is based upon the fact that the reissue application claims are of such scope as to omit the element 'a stabilizer' as an ingredient of the composition of the film described by the patent.

"The examiner contends that no one could predict that would happen or whether the process would be operative if the composition were thus in effect broadened. Upon consideration of the patent it is found that there was no conception of omitting the stabilizer. It is included in the descriptive matter of the patent specification as an essential constituent and is definitely included in each of the claims of the patent. We believe no latitude is permissible in this respect. We are accordingly constrained to hold that this ground of rejection must be affirmed.

"A second ground of rejection designated 'new matter' is applied. This relates to and is scarcely separable from the first ground of rejection above noted. It is quite clear that omission of some element or constituent of the composition that was stated in the patent as being essential may be new matter or a broadening of the disclosure. The recent authoritative case U. S. Industrial Chemicals v. Carbide and Carbon [315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105], 538 O.G. 741, 53 U.S.P.Q. 6 is considered conclusively determinative of these matters. We accordingly affirm this ground of rejection.

"The appealed claims have been rejected on the ground that the oath filed with the reissue fails to support sufficient ground of inadvertence, accident or mistake to warrant a reissue. We consider this ground of rejection applicable in that the oath merely states that the 'inadvertence and mistake' consists in the inclusion of the stabilizer. On consideration of the patent it appears indicated very positively and prominently that this agent, specifically hexamethylenetetramine, was an essential and important element in the composition. It is believed inconceivable that such inclusion could have been inadvertence, accident or mistake, and nothing in the record seems to lead to a different conclusion. It appears that circumstances have arisen that merely make it desirable on applicant's part to drop limitations to the stabilizer. * * *"

It is contended on behalf of appellant, in substance, that the facts recited in the oath do constitute "inadvertence, accident, or mistake" within the meaning of the reissue statute, U.S.C., Title 35, § 64, 35 U.S.C.A. § 64; that the cancellation of the explanation (claimed to be erroneous) of

what takes place when pliofilm is heated does not inject new matter into the specification; that the appealed claims are not broader than the original disclosure, but are for the same invention as the claims of the granted patent, and all these contentions are argued in detail.

It may be conceded that the arguments are plausible, but we are not convinced that they are sound.

Each of the original claims which, as has been stated, are not embraced in the application for reissue, is expressly limited to the use of stabilized rubber hydrohalide, and there is no teaching or suggestion in the specification that any other than a stabilized rubber hydrohalide may be used. Indeed (referring to the time of his original application), appellant states in his oath to the instant application:

" * * * (1) I was not acquainted with the fact that unstabilized rubber hydrohalides react the same or substantially the same as stabilized rubber hydrohalides when heated as described in the patent and (2) I did not appreciate the necessity of having product claims and subsidiary process claims in the event of a priority contest."

■ It seems clear to us that the claims here at issue could not have been granted upon the basis of the original specification, and in our opinion it would be wholly incompatible with the patent laws to grant claims in a reissue application which could not have been granted in the original patent. See In re McLean and Weber, 87 F.2d 508, 24 C.C.P.A., Patents, 941, 32 U.S.P.Q. 386; In re Smyser, Deceased, etc., 135 F.2d 747, 30 C.C.P.A., Patents, 1093, 67 U.S.P.Q. 402.

As a matter of fact, according to the brief for appellant, at the time the Goodyear company acquired the patent it "had never marketed at that time a Pliofilm which did not contain a light-stabilizing ingredient as called for by the Calvert patent." It is said, however, that the researchers of the company "were aware that the unstabilized rubber hydrochloride behaved in precisely the same manner as the stabilized rubber hydrochloride and that therefore Mr. McCoy was in error as to the cause of this behavior. As soon as possible, therefore, after the patent was acquired by the Goodyear company, this application for the reissue of the patent was filed. * * *" So far as the record

shows McCoy was an independent inventor who never had any connection with the Goodyear company. He sold the company his patent outright, and had no further interest in it. His method was evolved solely with the use of the stabilized product, and the only reasonable deduction to be drawn from the state of facts above outlined is that he probably learned about the claimed value of the unstabilized product when he was approached to secure the filing of the reissue application. So, in fact, the use of an unstabilized material was not discovered by him, but by some other person.

■ Under the circumstances recited, it is clear that appellant could not have intended that his patent should cover the use of an unstabilized film, and, therefore, a reissue with claims broadened to include the use of such material may not be allowed. See In re Mayo, 129 F.2d 700, 29 C.C.P.A., Patents, 1192, 54 U.S.P.Q. 322.

The case (involving infringement) of U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corporation, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105, decided March 30, 1942, cited in the decision of the board, seems to us to be directly in point here.

The pertinent portion of the decision is summarized in the brief of the Solicitor for the Patent Office before us as follows:

" * * * That case involved a reissue patent relating to a process of producing ethylene oxide. The invention disclosed and claimed in the original patent was for a process consisting in subjecting ethylene to the simultaneous action of the oxygen of air and of water in the presence of a catalyzer. The claims of the reissued patent omitted to recite the use of water. It was stated by the patentee that it had been found that the process could be operated without water or at least only with the water which is incidentally present in the air. The Court said: 'We think it plain that the reissue omitted a step in the process which was described and claimed as essential in the original patent' and on this ground held the reissue patent invalid as not being for the same invention as described and claimed and intended to be secured by the original patent."

In view of our conclusion that all the claims on appeal were properly rejected upon the grounds epitomized in the excerpt from the board's decision above quoted, it is unnecessary to consider the

rejection of claims 26, 38, and 39 on the art cited.

The decision of the board is affirmed.

Affirmed.