50 C.C.P.A.(Patents)

### In re SMYSER.
### Patent Appeal No. 4702.

Court of Customs and Patent Appeals.

May 21, 1943.

Charles S. Grindle, of Washington, D. C. (E. G. Carpenter, of St. Paul, Minn., J. T. Basseches, of New York City, and John J. Darby, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 25 to 28, inclusive, 31 to 36, inclusive, 38, 41, 42, and 44 to 52, inclusive) in appellant's application for a patent for an alleged invention relating to an abrasive article, commonly known as sandpaper.[1]

Appellant's involved application, filed November 3, 1932, is for a reissue of his patent, No. 1,788,600, issued January 13, 1931, on an application, No. 691,149, filed February 7, 1924, and is alleged to be a

[1] This cause was originally decided by this court on the 5th day of April, 1943. Thereafter, counsel for appellant filed a petition for rehearing. The rehearing was granted May 20, 1943, solely for the purpose of permitting the court to revise certain language in its original decision.

748

division of a reissue application, No. 532,-674, filed April 24, 1931.

Counsel for appellant moved to dismiss the appeal as to claims 25, 26, 27, 31, 32, 36, 37, 38, 39, 43, 44, 45, 50, 51, and 52. The motion will be granted. That leaves for our consideration claims 28, 33, 34, 35, 41, 42, and 46 to 49, inclusive.

We quote claims 28 and 48, which are representative of the appealed claims.

"28. An article of the character described in the form of a sheet or web-carrying elongated particles of non-conducting material, having a supporting base of electrically insulating or poorly conducting material, said base having an adherent coating of conducting material, a coating of binder material over said conducting material, and a coating of said elongated non-conducting material deposited in uniform relationship over and adhesively united by said binder material to said supporting base."

"48. A new article of manufacture having abrasive particles positioned relative to one another by electric action, substantially all of the abrasive particles at the abrading surface having major and minor axes and being responsive to electric action and substantially all of said particles being positioned and supported in an adhesive with their major axes substantially perpendicular to the abrading surface."

It is agreed that the claims now before us were not rejected as unpatentable over the prior art, and that, therefore, the prior art of record need not be considered. All of such claims were rejected, however, on the ground that they define an invention different from that elected to be prosecuted in appellant's application, No. 691,149, which matured into his patent No. 1,788,600, and that appellant's failure to claim the invention defined by the involved claims in his original application was not due to inadvertence, accident, or mistake as provided in section 4916 of the Revised Statutes, U.S.C., title 35, section 64, 35 U.S.C.A. § 64, but, on the contrary, was the result of deliberate action by appellant in cancelling certain article claims during the prosecution of his original application because the Primary Examiner required division between those claims and the apparatus and process claims contained in that application.

The statute, so far as pertinent to the issue here, reads:

§ 4916. (U.S.C., title 35, § 64). "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent, and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the reissued patent, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent to the extent that its claims are identical with the original patent shall constitute a continuation thereof and have effect continuously from the date of the original patent. The commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued letters patent. * * *"

It appears from the record that appellant's original application which matured into patent No. 1,788,600 contained claims to a process and an apparatus for making the article defined by the appealed claims. That application also contained six article claims, numbered 25 to 30, inclusive. Of those claims, claims 26, 27, and 28 contained the limitation that the abrasive material was electrostatically deposited or impacted on a sheet of fabric or the like. In response to a holding by the Primary Examiner that claims 26, 27, and 28 were objectionable because the article was defined by the method of manufacture, that is, that the abrasive material was electrostatically deposited or impacted upon the sheet of fabric, the term "electrostatically" was deleted from those claims by appellant. Thereupon, the Primary Examiner required division between the article claims—25 to 30, inclusive—and the process and apparatus claims contained .in appellant's application, the examiner stating that the can-

cellation of the term "electrostatically" indicated that that feature in claims 26, 27, and 28 did not affect the finished article which would be the same regardless of how the abrasive material was applied. All of those claims—25 to 30, inclusive—were also rejected on the prior art. In response to that action of the Primary Examiner, appellant cancelled claims 25, 26, 27, and 28 and renumbered claims 29 and 30 as claims 25 and 26. Those claims were again rejected on the prior art. Whereupon, according to the brief of the Solicitor for the Patent Office and it is not denied by counsel for appellant, claims 25 and 26 were cancelled. Thereafter, appellant amended his application by inserting another article claim—numbered 29—which read as follows:

"29. An article of manufacture comprising a fabric having intimately associated therewith a quantity of electrically conducting material, a quantity of binding material, and a quantity of abrasive material, the latter being held by binder."

Division was required by the Primary Examiner between that claim and the apparatus and process claims, on the ground that the article defined in claim 29 could be made by a process or processes other than that disclosed and claimed in that application. Thereupon, appellant cancelled claim 29, and his patent No. 1,788,600, issued, containing apparatus and process claims only.

In the brief of the Solicitor for the Patent Office it is stated that "* * * The basis of the final holding [by the Primary Examiner], in which the appellant acquiesced, was that the article claimed [in appellant's original application] could be made by processes other than that disclosed by him [and claimed in his original application and patent]. Such acquiescence obviously amounted to an assent to the proposition that claims drawn to articles which could be made by processes other than that disclosed in the application could not properly be included therein. Having agreed to this proposition and received his patent without such claims, appellant cannot obtain, by reissue, claims of the type which he deliberately withdrew."

Counsel for appellant contend that the board erred in holding that appellant was estopped to claim the appealed claims here under consideration in a reissue ap-

plication, because, it is stated in their brief, estoppel has no application where, as in the instant case, the claims presented in a reissue application contain limitations which patentably distinguish them from claims cancelled from the original application. In support of their position, counsel cite the cases of In re Murray, Jr., 20 C.C.P.A., Patents, 1046, 64 F.2d 788, In re Crowell, 23 C.C.P.A., Patents, 859, 81 F.2d 402, and Robert et al. v. Krementz, 3 Cir., 243 F. 877. In each of those cases it was held, in substance, that claims patentably distinct from cancelled claims in an original application which matured into patent might properly be included in a reissue application for that patent, if the failure to include them in an original application was due to inadvertence, accident, or mistake as provided in section 4916, supra. However, the issue here presented, was not present in any of those cases. In none of those cases, as in the case at bar, was the question of divisible subject matter involved. In each of those cases the subject matter in issue might have been included in the original application; whereas, in the instant case, it was held by the Primary Examiner, and acquiesced in by appellant, that the article claims presented in appellant's original application were for a separate and independent invention, which could be produced by a process or processes other than that disclosed and claimed in that application, and that, therefore, appellant was not entitled to prosecute such article claims in his original application.

That the Primary Examiner had authority to require division between the article claims and the process and apparatus claims in appellant's original application, is not questioned here by counsel for appellant. See In re Ferenci, 21 C.C.P.A., Patents, 856, 68 F.2d 737, and cases therein cited, and In re Burns, 23 C.C.P.A., Patents, 1091, 83 F.2d 292.

Counsel for appellant concede in their brief that all of the appealed claims now before us for consideration, with the exception of claim 48, define an article which may be made by processes other than that disclosed and claimed in appellant's original application. It is contended by counsel, however, that section 4916, supra, and rule 89 of the Rules of Practice in the United States Patent Office, 35 U.S. C.A.Appendix, expressly provide for the

allowance in a reissue application of divisible subject matter. That is to say, it is the contention of counsel that the statute and the rule provide for the allowance of article claims in a reissue application which are patentably distinct from claims cancelled from an original application on a requirement for division, although such article claims contain divisible subject matter and are subject to the same objection, so far as divisible subject matter is concerned, as were the claims cancelled from the original application. In support of their contention, counsel cite the case of Anilin and Fabrik v. Hamilton Manufacturing Company, C.C.Mass., 2 Fed.Cas. 346, Case No. 721, 1878 C.D. 185, 188, and Robinson on Patents, pp. 414–416, section 694.

Rule 89 of the Rules of Practice in the United States Patent Office reads: "Rule 89. The Commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for each division of such reissued letters patent. Each division of a reissue constitutes the subject of a separate specification descriptive of the part or parts of the invention claimed in such division; and the drawing may represent only such part or parts, subject to the provisions of rule 50. Unless otherwise ordered by the Commissioner, all the divisions of a reissue will issue simultaneously; if there be any controversy as to one division, the others will be withheld from issue until the controversy is ended, unless the Commissioner shall otherwise order."

We have examined the authorities cited by counsel for appellant and can find nothing therein which tends to support the argument advanced by them. For example, in Robinson on Patents, section 694, it is stated that in many instances, because of the intricate relations of the invention disclosed in the original patent, a single reissue patent may not afford the patentee the protection to which he is entitled. As an example of such a situation, it is stated that where the original application discloses a new combination containing new elements and sub-combinations or ."*subordinate* or *dependent* inventions" it would lead to confusion to attempt to describe and claim all of them in one reissue application. (Italics ours.) Accordingly, it is stated, a patentee may reissue his patent in divisions and receive a reissue patent for each of the *subordinate* and *dependent* parts of his invention. It is further stated in that authority, and quoted and italicized in appellant's reply brief, that "A patent for a manufacture, which can be produced *only* by a given process, may reissue in one patent for the process and another for the product." (Emphasis ours.) We find nothing in the authorities cited to sustain the contention of counsel that section 4916, supra, and Patent-Office rule 89 authorize the allowance of a reissue application for subject matter which could not have been included in the original application. In view of the fact that it is conceded that all of the appealed claims now before us for consideration, except claim 48, define an article which can be made by processes other than that disclosed and claimed in appellant's original application and patent, we are of opinion that the tribunals of the Patent Office were right in holding that appellant is not entitled to the allowance of those claims in his involved reissue application.

It will be observed that appealed claim 48, which, it is agreed, is patentably distinct from the article claims cancelled from appellant's original application and which, it is argued by counsel for appellant, defines subject matter which is nondivisible from that defined in the process claims in appellant's original application, defines an article of manufacture in which the abrasive particles are positioned relative to one another by electric action and are so positioned by such action that their major axes are substantially perpendicular to their supporting base. By "electric action" is meant, according to appellant's brief, that the abrasive particles are electrostatically deposited or impacted upon their base. Appellant did not claim in his original application, and probably did not do so due to inadvertence or mistake, that the abrasive particles were positioned with their major axes substantially perpendicular to their base, as set forth in claim 48. That limitation contained in claim 48 is conceded to be a patentable one; hence, claim 48 avoids the ground of rejection (lack of invention over the prior art) applied against the article claims in appellant's original application. However, it does not avoid the ground of rejection (that of divisible subject matter), in which

appellant acquiesced, applied against the article claims in appellant's original application; namely, that those claims defined an invention different from that disclosed in appellant's application and claimed in the process claims, in that the abrasive article defined therein could be made by some other process or processes. The process claims in appellant's original application and patent contained the limitation that the abrasive particles were electrostatically deposited on a sheet of fabric or the like. For example, claim 3 of the patent reads:

"3. The method of electrostatically depositing a coating upon an article comprising agitating granular matter in the presence of an electric field, confining movements of the agitated particles to a restricted zone, and electrostatically projecting the electrified particles outwardly from the restricted zone to the object to be coated."

Obviously, appellant does not avoid the ground of rejection that the article could be made by a process or processes different from that disclosed in his application and claimed in the process claims by including in claim 48 the process limitation contained in the process claims.

 Having acquiesced in the requirement for division, on the ground that the abrasive article might be made by a process or processes other than that of electrostatically depositing or impacting the abrasive particles on their base, disclosed in his original application, appellant is not entitled, in his reissue application, to a claim which defines an abrasive article by the same process of manufacture, although such claim may include a patentable limitation not included in the original article claims. Stated differently, appellant is estopped from obtaining in a reissue application a claim which, because of the requirement for division in which he acquiesced, was not allowable in his original application.

In referring to the theory that an applicant is entitled to secure in a reissue application claims which he could not have secured in his original application, this court, in the case of In re McLean and Weber, 24 C.C.P.A., Patents, 941, 944, 87 F.2d 508, 510, said: "* * *

Such a theory is so foreign to all the principles upon which the reissue of patents is based that the language [contained in section 4916, supra, relating to the introduction of new matter] should not receive such construction if any other reasonable construction be permissible. The very words 'inadvertence, accident, or mistake' imply that an applicant could have secured the allowance in his original application of claims sought in his reissue application had not there been 'inadvertence, accident, or mistake' which could have been, but was not, corrected after the filing date of his original application and before the issuance of his original patent. In the case at bar [as in the instant case] the claims here involved could not, upon the record before us, have been allowed in the original application. It would therefore seem that here there was no 'inadvertence, accident, or mistake' in the sense that those words are used in the first part of section 4916."

The question there at issue involved the introduction of new matter in a reissue application. However, the language used by the court in that case is clearly applicable to the issues in the instant case.

The appeal is dismissed as to claims 25, 26, 27, 31, 32, 36, 37, 38, 39, 43, 44, 45, 50, 51, and 52, and, for the reasons stated, the decision of the Board of Appeals is affirmed as to the other appealed claims.

Affirmed.

30 C.C.P.A. (Patents)

