**In re RUZICKA et al.**

**Patent Appeal No. 5026.**

Court of Customs and Patent Appeals.

June 22, 1945.

E. F. Wenderoth, of Washington, D. C. (A. Ponack, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellants have appealed here from the decision of the Board of Appeals of the

United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 5 and 6 of their application for a patent, which claims are concerned with compounds of the so-called "sex hormone" series, consisting of certain esters of androstenediol.

The claims are identical, claim 5 being expressed by chemical symbols and claim 6 being the same formula expressed in words. They are as follows:

5. The compounds of the formula

wherein R=H or H.CO.

6. The $\triangle^5$, $^6$–androstene–3–OR–17–ol compounds, R representing H or H.CO.

The instant application is for the reissue of appellants' patent No. 2,173,425, granted September 19, 1939. The claims were rejected upon two grounds: (1) that they are not patentable over the issue of an interference in which appellants' parent application was involved (the interference was dissolved upon abandonment of the contest by the appellants) and (2) that they are drawn to an improper Markush group.

We think it important to briefly state the facts with reference to both grounds and, by reason of the relation of the first ground to the latter, to discuss both of them.

■ Claim 5 of the application and claim 2 of the patent are identical except that the patent claim contains the symbol H-CO-O, whereas claim 5 contains the symbol RO with the statement that R may be H.CO or H. Appealed claim 5 is broader than patent claim 2 and covers not only the exact formula of claim 2 but also the formula which is identical with that of claim 2 except that the H.CO is replaced by H. Claim 5 is broader than claim 2 in so far as it includes the elements of claim 2 and more.

In appellants' original application claim 18 was drawn to a compound exactly cor- responding to that of claim 2 with H substituted for H.CO. This claim was canceled before the patent was issued. The allowance of claim 5 would, as is urged by the solicitor, in effect be a reinstatement of the canceled claim or, as the board expressed it, would allow the appellants to recoup what they gave up by canceling claim 18.

In the prosecution of appellants' parent application, the examiner required that appellants elect three species and listed claims to seven different species. None of them included claim 18. However, claim 18 was grouped, in effect, by the examiner with the species of claim 13 in group V, with the statement that "The generic claims are classified as follows and may go with the groups indicated." Appellants elected the species of groups V, VI, and VII. The examiner finally concluded that, there being no allowable generic claim, appellants should conditionally elect one species under the provisions of Rule 41 of the Rules of Practice in the United States Patent Office. Claim 18, as before stated, belonged to the group containing claim 13. The appellants conditionally elected the species of claim 15 for further prosecution pending final determination of the allowability of generic claims. They canceled claims 13 and 18.

Upon the foregoing statement of facts, it was the view of the board that appellants, in order to obtain a patent, refused to further prosecute claims 13 and 18 and that said claims were canceled for the sole purpose of obtaining a patent, which patent contains no generic claim.

Appellants submit the usual affidavit alleging inadvertence and state that there was no requirement for division; that they did not need to cancel claim 18; and that the cancellation was by virtue of accident and mistake. Just how this mistake occurred is not explained, other than in the foregoing statement of facts.

It is argued by the Solicitor for the Patent Office, in effect, that in this kind of case the determination of the question of inadvertence cannot rest solely upon the sworn statement of an applicant that a claim was omitted by mistake, and that is particularly true when it is apparent that there was a deliberate cancellation for the purpose of obtaining a patent. He relies upon In re McLean et al., 87 F.2d 508, 24 C.C.P.A., Patents, 941, and In re Smyser, Deceased, Etc., 135 F.2d 747,

30 C.C.P.A., Patents, 1093. He states that while the controverted claims are not identical, where one forfeits the right to obtain a narrow claim, it necessarily involves the forfeiture of the right to later obtain a broader claim to the same subject matter, citing In re Stanton, 86 F.2d 337, 24 C.C.P.A., Patents, 708. It is pointed out by the solicitor in this court that "Clearly, if this claim cannot be restored by direct action, the appellants should not be allowed to accomplish, by indirection, the exact effect of restoring this claim."

The Board of Appeals, by generally affirming the examiner's decision, held, in effect, and we think properly so, that under such circumstances the appellants are not now entitled in their present reissue application to have the claims on appeal.

On the question of improper Markush grouping, the examiner said: "Claims 5 and 6 are under further rejection as being drawn to an improper Markush group. In the compounds claimed when R is H they are alcohols and when it is H.CO-they are formic acid esters of the alcohols. It is submitted that an alcohol and its esters are not properly grouped in a Markush group as they are not deemed to be equivalents. After the abandonment of contest by this applicant a claim to the formate of androstenedoil was allowed on the basis that the formate is not equivalent of acetate abandoned by applicant (count 2). Obviously there is less justification for holding an alcohol equivalent of formate than there is for holding two homologous esters as equivalents. If applicants' argument for holding the alcohol as equivalent of formate should be acceded to, then the formate should be held equivalent of the acetate and claim 2 should be held unpatentable over count 2 of said interference."

This would seem to be a clear holding that the alcohols and esters are not properly grouped in a Markush group, since they are, according to the examiner's statement, not equivalents. This ground of rejection was adhered to by the examiner in his so-called "Resume", along with the other ground that the claims were unpatentable over the issue of the interference.

The decision of the board is not so full and clear on these issues as it might be. After reviewing the holding of the examiner and without expressly reversing it, the board said:

"Appellants argue that abandoned count 5 expressly excludes the hydroxy group. It is further argued that it is not obvious that the 3-diol compound would have any pharmaceutical activity, that is, any utility. As count 5 reads, it appears that X represents one group that by hydrolysis could be converted into another group, that is, a hydroxy group and that therefore this count 5 did not include the hydroxy group.

"The examiner also rejected claims 5 and 6 as drawn to an improper Markush group. He states that when R is H the compound is an alcohol and when R is H.CO it is a formic acid ester of the alcohol. In view of the prior record of applicants as to the species in which H=R, it seems obvious that applicants are not now entitled to a Markush group including H in a reissue application. It is our view that the examiner's position as to the claims being to an improper Markush group is correct.

"For the reasons indicated, the decision of the examiner is affirmed."

Upon request for reconsideration, the board called attention to the fact that the appellants had taken the position that the board did not affirm the examiner's decision because its decision was based upon grounds different from those assigned by the examiner. The board said:

"Appellants have requested reconsideration of our decision dated January 5, 1944 contending that the examiner's rejection was not affirmed because the reason set forth in the Board's decision is different from that urged by the examiner.

"It is contended that the examiner urged that the Markush group of claims was improper because it joins an alcohol with an ester and that the Board has not adopted the examiner's viewpoint but has affirmed the rejection on another ground, to the effect that in view of the prior record of applicants as to the species in which H=R, it seems obvious that applicants are not now entitled to a Markush group including H in a reissue application.

"The examiner pointed out that after the abandonment of contest by applicants a claim to the formate of androstenediol was allowed on the basis that the formate is not equivalent of acetate abandoned by applicants. Having secured an allowance by abandonment or cancellation of a particular species, applicants are not in a position

to recoup a claim covering this species in a reissue. It is not apparent that there is any inconsistency between the examiner's actual position and that of our decision. In any event, claims 5 and 6 were rejected by the examiner as being drawn to an improper Markush group and our decision was that it is our view that the examiner's position as to the claims being to an improper Markush group is correct. No reason is seen for modifying our decisions.

"The petition has been considered but is denied in respect to making any change in our decision."

It will be noticed that the board, in discussing the improper Markush group rejection, linked with its reasoning the abandonment of the interference contest by appellants. It then said: "Having secured an allowance by abandonment or cancellation of a particular species, applicants are not in a position to recoup a claim covering this species in a reissue." It then disavowed any inconsistency between its opinion and that of the examiner and again affirmed the view of the examiner with reference to the improper Markush grouping. It therefore, in effect, while not using the best terms to do so, affirmed the finding of the examiner in holding that it was improper to join an alcohol with an ester in a single group.

 We are not convinced that this holding of the tribunals below on the claims being based on improper Markush grouping was erroneous. The subject matter involves a highly technical chemical question, and it would necessarily have to be clear that the board erred in this respect before we would be warranted in reversing its holding.

A peculiarity of the chemical situation involved is presented by a statement in appellants' brief as follows:

"In addition to (1) paucity of true generic language to cover the compounds of the claims, the prerequisites to proper inclusion in a Markush formulation are (2) common utility for all members of the group,—here the two compounds covered by the claims; and (3) scientific classifiability together of the said members. These prerequisites are all here present so that for Markush purposes the claimed compounds must be regarded as equivalents.

"*As to the first point, there is no allowable true generic term which covers both compounds of the appealed claims. The Patent Office has never held to the contrary.* [Italics ours.]

"As to the second point, both said compounds are useful as pharmaceuticals (so-called 'sex hormones') or as intermediates in the preparation of such pharmaceuticals. This has never been questioned by the Patent Office.

"As to the third point, it appears to be the Patent Office viewpoint that because compound (II) is an alcohol while compound (IV) is an ester (viewed from the standpoint of the 3-position substituent), the two compounds are not properly classifiable together and may not, for Markush claim purposes, be regarded as equivalents."

These contentions illustrate the complexity of the problem, and we think that under the circumstances we would be wholly unjustified in holding that the alcohols and esters under consideration may be properly classifiable together for Markush claim purposes and in regarding them as equivalents chiefly upon the ground that, as appellants state, "said compounds are useful as pharmaceuticals (so-called 'sex hormones') or as intermediates (in the preparation of such pharmaceuticals." If all things which are useful as pharmaceuticals or as intermediates in the preparation thereof are to be held to be equivalents in the sense in which we are using that term, it is difficult to see how far afield that might lead in the application of the Markush doctrine.

It seems obvious to us that appellants in their instant application are, by reissue, attempting to recoup that which they, under the circumstances, must be presumed to have abandoned; that in order to obtain a patent, which they did obtain under the circumstances stated, they recognized that the Patent Office's original grouping was proper; and that to allow the claims in the instant application would be in violation of the settled rules and practice of the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.