**In re CORNELL et al.**

**Patent Appeal No. 5105.**

Court of Customs and Patent Appeals.

July 3, 1945.

Strauch & Hoffman, of Washington, D. C. (James A. Hoffman and William A. Strauch, both of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 22 and 25 to 32, inclusive, in appellants' application (filed January 29, 1943) for the reissue of their patent (No. 2,302,529, issued November 17, 1942) for an invention relating to "a repeating valve shut-off system."

Claim 22 is sufficiently illustrative of the appealed claims. It reads: "22. In a liquid dispensing apparatus of the class described comprising in combination a displacement mechanism, a register, and a speed change mechanism connected to be continually driven by said displacement mechanism and connected to continually drive said register, thermostatic means for

adjusting said speed change mechanism to compensate for the expanded or contracted condition due to the temperature of the liquid being measured and manually settable means for adjusting the speed of said mechanism in accordance with the coefficient of expansion of said liquid."

Appellants disclose in their reissue application a "repeating valve shut-off system" which is especially adapted for the measured filling of large containers with liquid, such as lubricating oil. The system comprises a pump which receives the 'liquid to be measured from a main storage tank and forces it through a liquid measuring apparatus or meter and a shut-off valve to the container to be filled. Provision is made for modifying the action of the liquid measuring apparatus or meter in accordance with the temperature of the liquid being measured, so that the measurement will be accurate regardless of the temperature of the liquid.

Appellants also disclose in their involved application a modified device which may be adjusted for measuring liquids having different coefficients of expansion. However, the details of that device are not material here.

The claims on appeal are drawn to a liquid measuring apparatus or meter per se, and do not include means for shutting off the flow of liquid.

In rejecting the appealed claims, the tribunals of the Patent Office stated that, during the prosecution of their original application, appellants deliberately elected to prosecute claims to the combination of a liquid measuring apparatus and a shut-off apparatus, and not to prosecute claims to the measuring apparatus per se, and that, therefore, their failure to obtain claims in their patent to the measuring device per se was not due to inadvertence, accident, or mistake, but rather was the result of deliberate action by them.

Appellants' original application, as filed, contained twenty-five claims, the first twenty-three of which included, in terms of varying scope, the combination of the liquid measuring apparatus and the shut-off or trip mechanism by which the flow of liquid is shut off. Some of those twenty-three claims included the modification by which adjustment might be made for liquids of different coefficients of expansion, while others did not. The two remaining claims (Nos. 24 and 25), which were limited to the modification which permits adjustment in accordance with the coefficient of expansion of the liquid being measured, did not include the shut-off or trip mechanism but were directed solely to a liquid measuring apparatus, as distinguished from the combination of the liquid measuring apparatus and the shut-off mechanism.

Claim 24 is illustrative of the cancelled claims. It reads: "24. A temperature compensated fluid measuring system comprising a displacement meter terminating in a meter shaft, a driven shaft, means rotatably connecting said meter shaft to said driven shaft, said means including a train of gears meshing with one another and bodily rotated with the shafts, a ratchet wheel secured to one of the gears, a pawl for intermittently moving the ratchet wheel, an oscillatable arm for moving the pawl, a ring movably mounted about the shafts, said oscillatable arm being oscillated by the ring during each rotation of the shafts, temperature responsive means immersed in the fluid being measured and being mechanically connected to the ring for changing the position of the ring in response to change in temperature, and means including a pointer and scale to so change the connection between the temperature responsive means and the member as to adjust the amount of temperature compensation produced by the temperature responsive means."

In his first action on the original application, the Primary Examiner required division between the combination claims and the claims directed to the measuring apparatus per se, stating that—

"The claims in this application are drawn to two distinct and independent inventions. Thus:

"I. Claims 1 to 23, inclusive, cover apparatus for dispensing predetermined quantities and would be classifiable in Class 221 in Div. 35 * * *.

"II. Claims 24 and 25 cover a temperature compensated fluid meter and would be classifiable in Class 73, Sub. 233 in Div. 36 * * *.

"Division between these groups is required in accordance with Rule 42, Rules of Practice [35 U.S.C.A.Appendix]. Applicant must limit his claims to a single invention.

*　　*　　*　　*　　*　　*

"While claims 24 and 25 may cover a subcombination of some of the claims of

Group (I), yet division is still proper. It is apparent that the device defined in claims 24 and 25 is of general application and is useful, for instance, in operating a register or recorder to give an indication of the volume flow of fluid corrected for temperature variations. In other words, the device defined in claims 24 and 25 has substantial and practical uses independent of the general combination defined in the claims of Group (I)."

Appellants responded to that action of the Examiner as follows:

"In response to the requirement for division in the Office action of March 29, 1939, applicants herewith elect the claims of Group I, that is, claims 1 to 23, inclusive.

"Claims 24 and 25 are temporarily retained, pending decision as to the advisability of filing a divisional application.

"An action on the merits of the elected claims is respectfully requested."

Thereafter, claims 24 and 25 were rejected by the Examiner on the ground "of misjoinder of inventions."

In response to that action of the Examiner, appellants stated that "Claims 24 and 25 are retained, pending the filing of a divisional application." Thereafter, the Examiner stated that claims 24 and 25 are rejected "on grounds of estoppel as of record." Thereupon, appellants cancelled those claims and their patent eventually issued with claims to the combination of the shut-off or trip mechanism and the liquid measuring apparatus, there being no claims to the liquid measuring device per se.

It is evident from the record that the Examiner's requirement for division was based on the theory that claims limited to the liquid measuring apparatus per se and claims directed to the combination of the measuring apparatus and the shut-off or trip mechanism were for two different inventions. The record also clearly discloses that appellants did not, at any time prior to the issuance of their patent, dispute the correctness of the Examiner's requirement for division, but, on the contrary, acquiesced therein, and elected to prosecute claims directed to the combination of the liquid measuring apparatus and the shut-off or trip mechanism.

Having thus deliberately withdrawn all claims to the measuring apparatus per se, in response to the Exam-

iner's requirement for division, appellants cannot now successfully contend that their failure to include claims in their patent to the measuring apparatus per se was due to inadvertence, accident, or mistake. We hold, therefore, that appellants are not entitled to obtain, by reissue, claims, regardless of scope, which are limited to the liquid measuring apparatus per se, and which they conceded by their acquiescence in the requirement for division they were not entitled to claim in their patent. In re Smyser, 135 F.2d 747, 30 C.C.P.A., Patents, 1093.

Counsel for appellants argue that "The appealed claims much more closely approximate claim 19 of the original patent than cancelled claims 24 or 25 of the original application."

Whether or not that statement of counsel is correct is not of vital consequence here.

Claims 19 and 20 in appellants' patent are drawn to the combination of the shut-off or trip mechanism and the liquid measuring apparatus, which combination appellants elected to claim in their original application. The claims here on appeal are not drawn to the combination of the shut-off mechanism and the liquid measuring apparatus, but are limited to the liquid measuring apparatus per se.

The requirement for division was not, as argued by counsel for appellants, based on the fact that claims 24 and 25 called for liquid measuring apparatus in more detail than some of the claims of the patent, but rather was based on the fact that those claims called for the liquid measuring apparatus per se, and did not include that apparatus in combination with the shut-off or trip mechanism as do the claims of the patent.

Counsel for appellants further contend that since certain of the appealed claims were involved in a pending interference at the time appellants presented them in their reissue application, the Primary Examiner should have added the reissue application to the interference and reserved the question of appellants' right to the allowance of such claims in their reissue application for subsequent determination.

Rule 94 of the Rules of Practice in the United States Patent Office provides for the inclusion of original or reissue applications in an interference only when the claims involved are allowable in

such applications. Accordingly, the Primary Examiner would have been manifestly wrong had he added appellants' reissue application to the pending interference without first determining whether or not the appealed claims were allowable in that application. Having determined that the appealed claims were not allowable in appellants' reissue application, the Examiner properly refused to add the involved application to the interference. See Emmet v. Fullagar, 1907 C.D. 322.

 We have carefully considered all of the contentions made here by counsel for appellants but are of opinion, for the reasons hereinbefore stated, that appellants are not entitled to the allowance of the appealed claims in their reissue application.

The decision of the Board of Appeals is affirmed.

Affirmed.