**In re Michael P. DOYLE.**

**01–1439 (Serial no. 08/601,101).**

United States Court of Appeals, Federal Circuit.

June 12, 2002.

Meredith Martin Addy, Brinks Hofer Gilson & Lione, of Chicago, IL, argued for appellant. With her on the brief were Robert N. Carpenter and Jonathan M. Blanchard.

John M. Whealan, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Mark Nagumo and Henry G. Sawtelle, Associate Solicitors.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

Michael P. Doyle appeals the decision of the Board of Patent Appeals and Interferences ("Board") affirming the final rejection of claims 54 through 71 of his Reissue Application No. 08/601,101 based on the doctrine of *In re Orita*, 550 F.2d 1277, 193 U.S.P.Q. 145 (CCPA 1977). *Ex parte Doyle*, No.2000–0601, slip op. at 12 (December 29, 2000), *request for reh'g denied* (March 22, 2001). Because the Board erred in extending *Orita* to affirm the rejection of the pending claims, we reverse and remand.

## I

The invention at issue in this case is a method of using chiral catalysts to catalyze enantioselectively particular classes of chemical reactions. Chiral compounds possess one or more chiral centers-centers that are asymmetric in all dimensions. Like a human hand, a chiral molecule cannot be superimposed on its mirror image, otherwise known as its enantiomer. Altering the relative orientation of the groups bonded to the various chiral centers of a molecule (*i.e.*, creating a different stereoisomer[1] of the compound) can have profound effects on the compound's properties, especially with respect to how the compound interacts with other chiral molecules. These effects are important in pharmaceutical chemistry, among other areas of chemical endeavor, because often only one of the stereoisomers of a particular target compound possesses the desired pharmacological activity. Unfortunately, it is difficult to synthesize only one possible stereoisomer because most reactions produce what is known as a racemic mixture, which is an equal mixture of enantiomers. A category of reactions known as enantioselective reactions, however, will produce either (ideally) one enantiomer or (somewhat less ideally) a mixture that is enriched in a target enantiomer.

The inventor, Michael Doyle, developed a genus of chiral transition metal catalysts and a method of using them to perform enantioselective reactions with prochiral starting materials.[2] Dr. Doyle originally filed an application that, according to the examiner, attempted to claim nine different inventions, and included both composition of matter claims and method claims. The examiner imposed a nine-way restriction requirement. Dr. Doyle elected group VI, a group of method claims directed towards using the genus of catalysts to insert carbenes[3] into carbon-hydrogen, oxygen-hydrogen, nitrogen-hydrogen, and silicon-hydrogen bonds. He cancelled the other pending claims. The groups that he did not elect and that are relevant for purposes of this appeal include the following: (1) Group VII, drawn to a method of forming metal stabilized ylides using a chiral catalyst; (2) Group VIII, drawn to a method of adding a hydrogen atom using a chiral catalyst; and (3) Group IX, drawn to methods of adding silicon and hydrogen or boron and hydrogen using a chiral catalyst. The application eventually issued as U.S. Patent No. 5,296,595 on March 22, 1994. Dr. Doyle did not file any divisional applications directed towards the nonelected groups during the pendency of the application that matured into the '595 patent.

1. Compounds that differ only in the relative arrangement of the groups attached to their chiral centers are known as stereoisomers. Enantiomers, which—as noted above—are nonsuperimposable mirror images of one another, are one type of stereoisomer.

2. A prochiral compound is one that, while not yet chiral, can become so when it undergoes a chemical transformation.

3. A carbene is a $CR_2$ fragment, where R represents a group bonded to the carbon atom.

On February 14, 1996, approximately one month before the running of the two-year clock for broadening reissues, *see* 35 U.S.C. § 251 (1994), Dr. Doyle filed a request for reissue of the '595 patent. He gave as his reason for requesting reissue that

[t]he 595 patent is partially defective because the claims are narrower than they should be in view of the 595 patent's disclosure and the prior art. In particular, all 53 claims of the 595 patent are drawn to a method of enantioselectively inserting a carbene with a chiral catalyst. I now believe that the claims should have been broader in order to cover the use of the defined catalysts to enantioselectively catalyze reactions with a prochiral compound.

Thus, Dr. Doyle seeks to broaden his claims to cover the reaction of his catalysts with a genus of prochiral molecules, *i.e.*, not just insertion of a carbene. As Dr. Doyle concedes, the proposed reissue genus claims read on (but are broader than) the claims of nonelected Groups VII–IX.

All of the relevant claims at issue are new claims—not amendments to issued claims. Proposed claim 54 is illustrative of the reissue claims Dr. Doyle seeks:

A method of enantioselectively catalyzing a reaction comprising the steps of:

providing a prochiral compound, providing a chiral catalyst comprising a nucleus with a first and second atom of the same metal aligned on an axis, said metal selected from the group consisting of rhodium, ruthenium, chromium, molybdenum, tungsten, rhenium and osmium; and first, second, third and fourth bridging ligands oriented radially to the axis, each ligand having a first and second complexing atom, the first complexing atom of each of said bridging ligands being complexed with said first metal atom, and the second complexing atom of each of said bridging ligands being complexed to said second metal atom, said first bridging ligand further comprising a ring including said first complexing atom and attached to said second complexing atom, said ring also including a chiral center attached through a first bonding site to said first complexing atom, attached through a second bonding site to said ring, having a third bonding site occupied by a first substituent, and having a fourth bonding site occupied by a second substituent, and said second bridging ligand further comprising a ring including said second complexing atom and attached to said first complexing atom, said ring also including a chiral center attached through a first bonding site to said second complexing atom, attached through a second bonding site to said ring, having a third bonding site occupied by a first substituent, and having a fourth bonding site occupied by a second substituent, and wherein the R/S configuration of the chiral center on the second bridging ligand is the same as the R/S configuration of the chiral center on the first bridging ligand, and reacting said prochiral compound and said chiral catalyst under conditions sufficient [sic, to] cause the reaction.

The examiner allowed claims 1–53 of the reissue application, which were identical to the claims of the issued patent, but rejected new claims 54–71. *Ex Parte Doyle*, slip op. at 1. The examiner based his rejection on three grounds: (1) defective reissue declaration based on failure to specify an error correctable by reissue under the *Orita* doctrine; (2) recapture; and (3) obviousness-type double patenting over claims 1–13 of U.S. Patent No. 5,175,311. Dr. Doyle appealed the first two grounds to the Board.[4] The Board agreed with Dr.

---

4. Dr. Doyle has agreed to file a terminal disclaimer to cure the double-patenting rejection

Doyle that the recapture doctrine, which prevents an applicant from recapturing through reissue matter surrendered to overcome a rejection based on prior art, is inapplicable here because the pertinent claims were not cancelled to overcome prior art. Rather, they were cancelled in response to a restriction requirement without prejudice to refiling. *Id.* at 11. The Board agreed with the examiner on the first ground of rejection, *i.e.,* that the reissue declaration was invalid under *In re Orita. Id.* at 4. Doyle now appeals the *Orita* rejection. This appeal from a final decision of the Board rests within our exclusive jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

■ This case involves a matter of first impression: whether failure to present a so-called linking claim, a claim broad enough to read on—or link—two or more groups of claims subject to a restriction requirement, is an error correctable by reissue. We review *de novo* the Board's legal determination regarding the scope of reissue and the applicability of *In re Orita* to the undisputed facts of this case. *In re Kollar,* 286 F.3d 1326, 1329, 62 USPQ2d 1425, 1427 (Fed.Cir.2002).

■ Section 251 sets forth the requirements for reissuance of a patent:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partially inoperative or invalid, by reason of a defective specification or drawing, *or by reason of the patentee claiming more or less than he had a right to claim in the patent,* the Director shall, on the surrender of such patent

and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251 (1994) (emphasis added). By its terms section 251 restricts reissue to situations in which an error occurred—situations that include the patentee having "claim[ed] more or less than he had a right to claim in the patent." "The statute is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." *In re Weiler,* 790 F.2d 1576, 1579, 229 USPQ 673, 675 (Fed.Cir.1986). Notwithstanding its remedial nature, "[s]ection 251 is not a panacea designed to cure every mistake which might be committed by an applicant or his attorney." *In re Orita,* 550 F.2d at 1281, 193 USPQ at 149.

■ Dr. Doyle's reissue application claims appear to come squarely within the mandate of section 251, for they are genus claims that read on, but are broader than, the species claims found in the issued '595 patent. In other words, Dr. Doyle simply seeks a broadening reissue of his '595 patent to cover material that he invented and disclosed, but inadvertently failed to claim in his issued patent. However, our predecessor court long ago held that failure to file a timely divisional in response to a restriction requirement is not an error correctable by reissue. *Id.* at 1280, 550 F.2d 1277, 193 USPQ at 148; *see also In re Cornell,* 32 C.C.P.A. 1251, 150 F.2d 702, 704, 66 USPQ 320, 322 (CCPA 1945); *In re*

in the event that he prevails on the other ground for rejection. *See In re Lonardo,* 119 F.3d 960, 965, 43 USPQ2d 1262, 1266 (Fed. Cir.1997) ("Obviousness-type double patenting ... is judicially created and prohibits an inventor from obtaining a second patent for

claims that are not patentably distinct from the claims of the first patent. With obviousness-type double patenting ... a terminal disclaimer may overcome that basis for unpatentability, assuming that the first patent has not expired" (internal citation omitted).).

*Smyser,* 30 C.C.P.A. 1093, 135 F.2d 747, 751, 57 USPQ 402, 406 (CCPA 1943). The so-called *Orita* doctrine therefore precludes a reissue applicant from obtaining substantially identical claims to those of nonelected groups identified in an examiner's restriction requirement when such claims could not have been prosecuted in the application from which they were restricted.

In this case, the Board affirmed the examiner's rejection because, in its view, Dr. Doyle was impermissibly seeking to "circumvent the *Orita* doctrine by presenting reissue claims that encompass not only the subject matter of the canceled, nonelected claims of the original patent application but also additional subject matter." *Ex Parte Doyle,* slip op. at 7. Thus, in the Board's view, *In re Orita* broadly precludes Dr. Doyle from obtaining reissue claims that read on the subject matter of nonelected groups. We disagree that *In re Orita* compels the Board's decision and hold that section 251 affords Dr. Doyle his requested remedy.

### III

In *In re Orita,* the Court of Customs and Patent Appeals addressed whether failure to file a divisional in response to a restriction requirement is an error redressable by reissue. The applicant in *In re Orita* agreed to the restriction requirement and cancelled the nonelected claims. Then, following issuance of the patent on the elected claims, he filed an application for reissue asserting "four additional claims substantially identical to the originally non-elected claims." *In re Orita,* 550 F.2d at 1278, 193 USPQ at 147. The Board upheld the examiner's rejection of the reissue claims, and the court affirmed, holding that the "error" of failing to file a divisional on the nonelected groups was wholly irrelevant to the question whether any error was present in the patent that issued on the elected claims. The court

agreed with the Board that while "appellants undoubtedly erred by failing to file a timely divisional application in order to obtain a divisional patent," *id.* at 1280, 550 F.2d 1277, 193 USPQ at 148, the patent that issued on their elected claims was error-free: "Patentees claimed exactly what they had a right to claim in the patent, no more nor less, and appellants' failure to timely re-file does not change this fact." *Id.* The court also rested its decision on the ground that the patentee knowingly acquiesced in the restriction requirement and that such acquiescence, because it is by definition not inadvertent, cannot be error for purposes of the reissue statute. This interpretation of error flowed from prior cases holding that "the substitution of 'error' in section 251 for 'inadvertence, accident, or mistake' in former R.S. section 4916 [which governed reissues before it was superceded by section 251] did not involve a substantive change." *Id.*

We have applied the rule enunciated in *In re Orita* on one occasion. In *In re Watkinson,* 900 F.2d 230, 231, 14 USPQ2d 1407, 1408 (Fed.Cir.1990), the applicant acquiesced during prosecution to a two-way restriction requirement. She cancelled her nonelected claims and never filed a divisional application on the nonelected group. Following issuance of the patent on the elected claim, she filed a reissue application seeking to add the nonelected claims. *Id.* She explained that the correctable error lay in her original acquiescence to the restriction requirement, which, she claimed, was improper. *Id.* The Board affirmed the rejection under *In re Orita,* and on appeal, we affirmed. We held that the propriety of the original restriction requirement was immaterial; the key thing was that Watkinson acquiesced to the restriction and was bound by the effect of her original decision: "*Orita* must be read for adhering to the previously established principle that applicants are 'es-

topped from obtaining by reissue claims which, because of a requirement for restriction in which they had acquiesced, they could not claim in their patent.'" *Id.* at 232, 900 F.2d 230, 14 USPQ2d at 1409 (quoting *In re Orita*, 550 F.2d at 1280, 193 USPQ at 148).

As Dr. Doyle notes, his situation is quite different from those of the applicants in *In re Orita* and *In re Watkinson*. First, Dr. Doyle's new claims are neither identical nor substantially similar to the nonelected claims. Dr. Doyle's new claims are genus claims, whereas the nonelected claims are species that fall within the new genus claims. In other words, the reissue claims are substantially broader than the claims of the nonelected groups. Thus, the estoppel rationale underlying *In re Orita* and *In re Watkinson* does not apply here. In the earlier cases, it was crucial that the applicant explicitly agreed to the requirement of independent prosecution of the disputed claims (or claims substantially similar to the disputed claims) in a divisional, and not as a part of the application directed towards the elected group. When the applicants returned in reissue seeking to add the disputed claims, the examiner, the Board, and this court rightly held them to the terms of their original agreements. The case is different where, as here, the applicant never asserted the reissue claims or anything similar to them in his original application, and also never agreed to prosecute the reissue claims in a divisional application. The estoppel rationale underlying *In re Orita* and *In re Watkinson* cannot support a similar result here because there is simply no agreement as to these particular claims whereby Dr. Doyle may be estopped.

There is another critical, and indeed dispositive difference between the present case and *In re Orita*: Dr. Doyle could have prosecuted his reissue claims with the claims of the elected group. Indeed, as the Solicitor concedes, these linking claims not only could have but *should have* been prosecuted with the elected group. This undercuts the other, more important rationale of *In re Orita*: that the issued patent contains no error. This second rationale underlying the result in *In re Orita* turned on the fact that the applicant could not have asserted the new reissue claims with the elected group. The reason, of course, was the restriction requirement—the examiner specifically required Orita to prosecute those claims in a different application. In contrast, Dr. Doyle could have prosecuted his claims with the elected group without running afoul of the restriction requirement because they are linking claims. *See Manual of Patent Examining Procedure* § 809.03 (8th ed. 2001) ("*MPEP*"). Furthermore, the new claims are broader than the issued claims, and therefore the issued claims are "wholly or partly inoperative or invalid ... by reason of the patentee claiming ... less than he had a right to claim in the patent." 35 U.S.C. § 251 (1994). In other words, Dr. Doyle has successfully asserted an error *in the issued patent* correctable by reissue and *In re Orita* does not—and cannot—limit his statutory right to seek reissue under the circumstances.

The Solicitor's reliance on the pre 1952 Act cases *In re Smyser* and *In re Cornell* falters under the same rationale. In both of those cases, the applicant tried to seek via reissue claims that, because of a restriction requirement, could not have been prosecuted with the original elected group. In *In re Smyser*, the original application claimed sandpaper, a process of making sandpaper, and an apparatus for making sandpaper. 135 F.2d at 747–48, 57 USPQ at 404. The applicant acquiesced in a two-way restriction requirement between the claims to sandpaper and the apparatus and process claims, and elected the process and apparatus claims. *Id.* at 749, 30

C.C.P.A. 1093, 135 F.2d 747, 57 USPQ at 404. He sought to obtain the sandpaper claims via reissue, arguing that the reissue statute "expressly provide[s] for the allowance in a reissue application of divisible subject matter" despite the fact that those claims were subject to restriction during the original prosecution. *Id.* at 749–50, 30 C.C.P.A. 1093, 135 F.2d 747, 57 USPQ at 405. The court rejected Smyser's argument and affirmed the rejection because "appellant is estopped from obtaining in a reissue application a claim which, because of the requirement for division in which he acquiesced, was not allowable in his original application." *Id.* at 751, 30 C.C.P.A. 1093, 135 F.2d 747, 57 USPQ at 406. Similarly, in *In re Cornell,* we rejected an attempt to claim through reissue apparatus claims that, due to a restriction requirement, the applicant could not prosecute with the original claims. 150 F.2d at 704, 66 USPQ at 322 ("We hold, therefore, that appellants are not entitled to obtain, by reissue, claims, regardless of scope, which are limited to the liquid measuring apparatus per se, and which they conceded by their acquiescence in the requirement for division they were not entitled to claim in their patent."). In contrast to both *In re Smyser* and *In re Cornell,* Dr. Doyle could have prosecuted his linking claims with the elected group. Therefore an error exists in Dr. Doyle's issued patent (failure to claim the broad genus claims) that did not exist in the *Smyser, Cornell,* or *Orita* cases.

■ *Orita,* and *Smyser* and *Cornell* (cases upon which *Orita* rests), are best understood for what they are: interpretations of the reissue statute. Each state the correct rule, which is that reissue lies only for correction of error *in an existing patent.* As noted above, this rationale underlies the decision in each of those cases, where the patent in reissue contained no possible error because the matter sought on reissue could not have been prosecuted

originally. That rationale cannot apply to Dr. Doyle's reissue application, in which he points to error in the existing patent, namely, failure to claim as broadly as possible matter that could have been sought in the original application.

The Solicitor views *Orita* as mandating that acquiescence to a restriction requirement forecloses the applicant's right to assert claims in reissue to any portion of the subject matter of the nonelected groups. Thus, in the Solicitor's view, because Dr. Doyle's linking claims read on the subject matter of some of the nonelected groups, he is estopped from seeking in reissue to add those claims to the patent claiming the elected group. The Solicitor takes too broad a view of *In re Orita. In re Orita* did not create a broad rule disallowing any reissue claims that read on nonelected subject matter. As discussed above, the reissue claims asserted in *In re Orita* did not just read on nonelected subject matter, but rather were "substantially identical to those non-elected in [the] application." *In re Orita,* 550 F.2d at 1280, 193 USPQ at 149. As discussed above, the rationale underlying *In re Orita* and the holding of that case extend only to claims that are identical to or of substantially similar scope to those of the nonelected group.

The linking claims involved here are obviously not of substantially similar scope as the nonelected species claims—they are quite significantly broader. More importantly, they could have been asserted along with the elected group because they read on the species of the elected group. Indeed, had Dr. Doyle not inadvertently neglected to assert the linking claims in his prosecution of the elected group, and had those claims been allowed, the examiner would have been required to lift the restriction requirement as to the other groups linked by the new claims and allow

prosecution of those other groups. The MPEP expressly provides that "[i]f a linking claim is allowed, the examiner *must* thereafter examine species if the linking claim is generic thereto, or he or she *must* examine the claims to the nonelected inventions that are linked to the elected invention by such allowed linking claim." *MPEP* § 809.04 (emphases added). Viewed in this light, Dr. Doyle's failure to assert the linking genus claims truly was an error in the issued patent. It was not, as in *In re Orita,* merely an error pertaining to the prosecution (or lack thereof) of other, divisional applications directed towards the nonelected groups.

The Solicitor also relies on *In re Weiler,* 790 F.2d 1576, 229 USPQ 673 (Fed.Cir. 1986), which, in the Solicitor's view, belongs to the *In re Orita* line of cases and supports a broad estoppel based on failure to file a divisional application. The examiner in *In re Weiler* imposed a three-way restriction requirement. Weiler made an election, but failed to file divisional applications to assert the nonelected groups. *Id.* at 1578, 790 F.2d 1576, 229 USPQ at 674. Following the issuance of his patent on the elected claims, he filed a reissue application asserting new claims that, according to Weiler, "should have been made in the original application." *Id.* Following rejection of all the reissue claims, Weiler appealed to the Board. The Board sustained the examiner's rejection of claims 14–18 based on *Orita* because those claims were " 'directed to the same subject matter as the non-elected conjugate claims 9 and 10' of the original application." *Id.* at 1579, 790 F.2d 1576, 229 USPQ at 674. The Board sustained the rejection of two other claims (13 and 19) because they

> are directed to subject matter not claimed at all in the original application. As to them, the Examiner's reliance on the case of *In re Rowand et al.* is entirely correct and that decision is controlling. Here, as in that case, "there is

nothing in the original patent evidencing that appellants intended to claim (this now claimed subject matter)."

*Id.* (quoting *In re Rowand,* 526 F.2d 558, 560, 187 USPQ 487, 489 (CCPA 1975)).

Weiler did not appeal the *Orita* rejection of claims 14 18 to this court, and we therefore had no occasion to address the propriety of that rejection. He appealed only the rejection of claims 13 and 19. We affirmed that rejection because "Weiler's failure to have ever claimed, broadly or narrowly or otherwise, the subject matter of claims 13 and 19, and his failure to show an 'intent to claim' that subject matter, indicated absence of the statutorily required 'error.'" *Id.* at 1580, 790 F.2d 1576, 229 USPQ at 675. Aside from the lack of intent-to-claim, we also rested our decision on the fact that Weiler's new claims asserted a completely separate invention from the issued claims or any of the nonelected claims. *See id.* at 1581, 790 F.2d 1576, 229 USPQ at 676. Thus, because claims 13 and 19 claimed a distinct invention from the issued claims, they too would have been subject to the original restriction requirement and the applicant would not have been allowed to prosecute them with the original patent—he would have been required to assert them in a divisional. *Id.* Under *In re Orita,* of course, there is no correctable error in failing to prosecute divisional applications on inventions of the nonelected groups identified by the examiner in the original restriction requirement. In *In re Weiler,* we held that the result should be the same with respect to claims 13 and 19, which also asserted wholly distinct inventions from that covered by the issued patent. *Id.* at 1582, 790 F.2d 1576, 229 USPQ at 677. We explained that "[i]f it were not error to forego divisional applications on subject matter to which claims had been made in the original application, it cannot on the present record have been error to forego divisional appli-

cations on subject matter to which claims had never been made." *Id.*

There is a crucial difference between the situation in *Weiler* and the present case. Dr. Doyle's claims are not to an invention distinct from that of the issued claims. Rather, as the Solicitor admits, they are linking claims that read on, and could have been asserted with, the elected group. Therefore, the entire premise of *Weiler* is inapplicable to this case, for *Weiler* applies only to an attempt to assert new claims in reissue that read on a separate invention and not on the subject matter of the issued claims.

The Solicitor also argues that allowing patentees in Dr. Doyle's position recourse to reissue will undercut the copendency requirements of sections 120 and 121, and will be detrimental to the public interest in the certainty and finality of patent rights. The copendency requirement of section 120 refers to the requirement that a patent application filed as a continuation or divisional application upon an originally filed application must be filed "before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application" in order to receive the benefit of the earlier filing date. 35 U.S.C. § 120 (1994). Section 121, which provides for divisional applications, allows an invention that has been the subject of a restriction requirement to receive the benefit of the earlier filing date only if filed in accordance with section 120. Thus, the Solicitor argues that allowing the restricted subject matter to receive the benefit of the earlier filing date via reissue would have the prac-

tical effect of circumventing the requirement that the subject matter be claimed in an application filed prior to the issuance of the original patent.

We do not agree. The Solicitor's argument presumes a situation in which the claims sought on reissue have been restricted from an application in earlier proceedings, *i.e.,* the *Orita* situation. In that situation, the copendency requirements of sections 120 and 121 are relevant. *See In re Orita,* 550 F.2d at 1280–81. In this case, the matter sought on reissue could have been presented with the original application, so sections 120 and 121 are not implicated.

As far as the public interest in the certainty and finality of patent rights is concerned, it is certainly true that allowing reissue, and particularly broadening reissue, undermines these various interests to some extent. But Dr. Doyle's situation is no more an affront to the public interest than any other broadening reissue. Congress spoke to this matter when it decided to allow broadening reissues, and we may not rewrite the statute based on our own view of the proper outcome of that public policy debate. Congress has weighed the benefits and burdens of allowing corrections of this sort of error by reissue, and has decided to allow broadening reissues, subject, of course, to certain safeguards: the two-year time limitation and intervening rights.[5] *See* 35 U.S.C. §§ 251–252 (1994) (providing for two-year time limit and intervening rights). These safeguards are no less effective in Dr. Doyle's case than in any other situation in which a patentee alters the scope of his property right through reissue.

---

**5.** The doctrine of intervening rights is based on the second paragraph of 35 U.S.C. § 252, which "provides that when certain conditions are present a reissue shall not abridge or affect certain rights of those who acted before the reissue was granted. Because of such pre-reissue activity, an infringer might enjoy a 'personal intervening inventing right' to continue what would otherwise be infringing activity after reissue." *Seattle Box Co. v. Indus. Crating and Packing Inc.,* 756 F.2d 1574, 1579, 225 USPQ 357, 361 (Fed.Cir.1985).

The Solicitor also urges us to hold that Dr. Doyle dedicated the subject matter of his linking claims to the public by failing to file a divisional application on the nonelected groups. He urges that "the public is entitled, on the basis of the prosecution of the '595 patent, to conclude that it can practice any of inventions I–V or VII–IX, without apprehension of infringing claims to the non-elected inventions in any patent claiming the benefit of priority of the '595 patent." However, the public knows, or should know, that an issued patent can be broadened by reissue during a two-year period following issuance. The public is therefore on notice that at least some matter can be "dedicated to the public" in error, and that the error, if caught in time, can be corrected by reissue. And if the patentee succeeds in obtaining a reissue that alters the scope of her right to exclude, then the public interest is protected through intervening rights. If those statutory rights are insufficient to protect the public interest in this instance, then the remedy lies with Congress, and not the courts.

## IV

For the reasons given above, we reverse the Board's decision affirming the rejection of the pending claims and remand for further proceedings not inconsistent with this decision.

## COSTS

No costs.

*REVERSED AND REMANDED.*